## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| NATHAN PRAWITT, derivatively on behalf of INTRUSION, INC., <br><br> Plaintiff, <br><br> v. <br><br> JACK B. BLOUNT, MICHAEL L. PAXTON, B. FRANKLIN BYRD, P. JOE HEAD, GARY DAVIS, JAMES F. GERO, ANTHONY SCOTT, ANTHONY J. LEVECCHIO, KATRINKA B. MCCALLUM, JAMIE M. SCHNUR, GREORY K. WILSON, <br><br> Defendants, <br><br> and <br><br> INTRUSION, INC., <br><br> Nominal Defendant. | Case No. 1:22-cv-00735-MN |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ..................................................................................1

**FACTUAL BACKGROUND** .....................................................................................2

**PROCEDURAL BACKGROUND** .............................................................................4

**ARGUMENT** ............................................................................................................5

    I.       STANDARDS GOVERNING FINAL APPROVAL ......................................5

A.    Settlements Are Generally Favored.........................................................................5

B.    The Settlement Meets the Standards for Final Approval ........................................6

    1. The Settlement Offers Substantial Benefits to Intrusion....................................7

    2. The Settlement Was Negotiated at Arm's Length..............................................11

    3. The Intrusion Stockholders Were Well Represented .........................................11

    4. The Complexity, Expense, and Likely Duration of the Litigation.....................12

    5. The Reaction of the Stockholders to the Settlement .........................................13

    6. The Stage of Proceedings at Which Settlement Was Achieved.........................13

    7. Risks in Establishing Liability and Damages....................................................14

    8. Risks of Maintaining the Action Through Trial................................................15

    9. Defendants' Ability to Withstand a Greater Judgment .....................................16

    10. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and in Light of the Litigation Risks ........................................................16

C.    The Settlement Merits a Presumption of Fairness.................................................17

    II.      THE NOTICE SATISFIES DUE PROCESS .................................................17

**CONCLUSION** ...........................................................................................................**18**

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*In re Am. Fam. Enters.*,
  256 B.R. 377(D.N.J. 2000) .................................................................................. 7


*In re AOL Time Warner S'holder Derivative Litig.*,
  2006 U.S. Dist. LEXIS 63260 (S.D.N.Y. Sep. 6, 2006)........................................... 13


*Bell Atlantic Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993)..................................................................................... 6, 7


*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) .............................................................................. 12


*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)................................................................................. 12, 14


*In re Chickie's & Pete's Wage & Hour Litig.*,
  No. 12-6820, 2014 U.S. Dist. LEXIS 30366 (E.D. Pa. Mar. 7, 2014)...................................... 11


*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)..................................................................................... 6


*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005)..................................................................... 10


*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) .............................................................................. 14


*Foote v. Mehrotra*,
  C.A. No. 21-00169, 2023 U.S. Dist. LEXIS 196796 (D. Del. Nov. 2, 2023) ................... 10, 14

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)..............................................................................*passim*

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)........................................................................... 5, 12, 17

*Guevoura Fund Ltd. v. Sillerman,*
    Case No. 1:15-cv-07192-CM, 2019 U.S. Dist. LEXIS 218116 (S.D.N.Y. Dec. 18, 2019)...... 12

*Healthcare Services*,
    Case No. 2:20-cv-03426-WB, 2022 U.S. Dist. LEXIS 134005, (E.D. Pa. July 28, 2022)....... 15

*In re Hemispherx Biopharma, Inc., Sec. Litig.*,
    No. 09-5262, 2011 U.S. Dist. LEXIS 172214 (E.D. Pa. Feb. 14, 2011) ................................. 11

*In re Ikon Office Sols., Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)............................................................................. 16

*In re Intel Corp. Derivative Litig.*, Cons.
    C.A. No. 09-867-JJF, 2010 U.S. Dist. LEXIS 74661 (D. Del. July 20, 2010).......................... 6

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) .................................................................... 5, 10, 12

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ......................................................................... 14

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970).................................................................................... 9

*Mohammed v. Ellis*,
    No. 12–cv–1831, 2014 U.S. Dist. LEXIS 118796 (D. Colo. Aug. 26, 2014)........................... 13

*In re Nat'l Football League Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016)............................................................................... 13

*In re NVIDIA Corp. Deriv. Litig.*,
   No. C-06-06110, 2008 U.S. Dist. LEXIS 117351 (N.D. Cal. Dec. 22, 2008)......................... 10

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................ 11

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ........................................................................ 6, 7, 10

*Pfeiffer v. Alpert*,
   C.A. No. 10-1063, 2011 U.S. Dist. LEXIS 174370 (D. Del. Aug. 3, 2011) ....................... 7, 18

*In re Safety Components, Inc. Sec. Litig.*,
   166 F. Supp. 2d 72 (D.N.J. 2001) ....................................................................... 16

*Schimmel v. Goldman*,
   57 F.R.D. 481 (S.D.N.Y. 1973) ........................................................................... 5

*Shlensky v. Dorsey*,
   574 F.2d 131 (3d Cir. 1978)............................................................................... 6

*Stoetzner v. U.S. Steel Corp.*,
   897 F.2d 115 (3d Cir. 1990)............................................................................... 6

*Unite Nat'l Ret. Fund v. Watts*,
   No. Civ. A. 04CV3603, 2005 U.S. Dist. LEXIS 26246 (D.N.J. Oct. 28, 2005) .......... 10, 14, 17

*Vinh Du v. Blackford*,

No. 17-cv-194, 2018 U.S. Dist. LEXIS 211796 (D. Del. Dec. 18, 2018) ............................... 12

*In re Viropharma Inc. Sec. Litig.*,

2016 U.S. Dist. LEXIS 8626 (E.D. Pa. Jan. 25, 2016) ....................................................... 13, 17

*In re Warfarin Sodium Antitrust Litig.*,

391 F.3d 516 (3d Cir. 2004) ........................................................................................... 5, 14, 16

**RULES**

Rule 23.1 of the Federal Rules of Civil Procedure ............................................................. *passim*

## PRELIMINARY STATEMENT

Plaintiff Nathan Prawitt ("Plaintiff"), derivatively on behalf of Intrusion, Inc. ("Intrusion" or the "Company"), respectfully submits this Memorandum of Law in Support of Plaintiff's Unopposed Motion for Final Approval of Derivative Settlement, pursuant to Rule 23.1(c) of the Federal Rules of Civil Procedure.

The proposed settlement (the "Settlement") resolves claims for violations of the Securities Exchange Act of 1934 (the "Exchange Act"), as well as breach of fiduciary duty and related claims based on Plaintiff's allegations that the Individual Defendants,[1] *inter alia*, knowingly or recklessly issued, and/or permitted the issuance of, materially false and misleading public statements between October 14, 2020 and August 26, 2021 (the "Relevant Period").

The Settlement provides for the Company's adoption and implementation of the governance reforms (the "Measures") set forth in the Stipulation of Compromise and Settlement, dated September 28, 2023 (D.I. 37, Ex. 1) (the "Stipulation"). As discussed below, the Measures specifically target, and will significantly reduce the likelihood of recurrence of, the wrongdoing alleged in the Action by significantly enhancing the oversight processes and responsibilities of the Board and senior management. In addition, if approved, legal and Company policy compliance will be factored into setting executive compensation, and Intrusion will retain an independent consultant for the next two (2) years to analyze the Company's internal controls over public disclosures and legal compliance, and to make recommendations for improving such controls. The governance reforms provided by the Measures, therefore, specifically target the Company's

---

[1] The "Individual Defendants" are defendants Jack B. Blount, Michael L. Paxton, B. Franklin Byrd, P. Joe Head, Gary Davis, James F. Gero, Anthony Scott, Anthony J. Levecchio, Katrinka B. McCallum, Jamie M. Schnur, and Gregory K. Wilson. The Individual Defendants and the nominal defendant Intrusion are collectively referred to herein as "Defendants."

oversight deficiencies that enabled the wrongdoing alleged in the Action. Plaintiff respectfully submits that, as Intrusion has expressly acknowledged, the Settlement confers substantial benefits on the Company and its stockholders.[2]

The Settlement, the product of substantial effort, advocacy, and protracted arm's-length negotiations conducted by skilled and experienced counsel for Plaintiff ("Plaintiff's Counsel") and Defendants, is the result of a fair process. Moreover, any attempt to improve the benefits conferred by the Settlement through continued litigation would be protracted, costly, and uncertain. The Settlement, therefore, falls well within the range found to be fair, reasonable, and adequate in similar cases. Significantly, to date, no objections to the Settlement have been received in response to the notice to Intrusion shareholders approved by the Court (the "Notice"). Plaintiff respectfully submits that the Settlement, therefore, satisfies the criteria for final approval.

## FACTUAL BACKGROUND

Intrusion, a Delaware corporation, develops and sells products to protect against cyberattacks through purported advanced threat intelligence and artificial intelligence. ¶¶ 12, 44.[3] In or about May 2020, it was disclosed that the Company was developing a new product, "Shield," which purportedly used artificial intelligence ("AI") to identify and stop cyberattacks in real time and without the need for human intervention. ¶ 45. Intrusion claimed Shield would be fully compatible with existing security measures and require minimal adjustments for use on existing

---

[2] In addition, the Measures significantly bolster the Company's insider trading policy (Stipulation, ¶ 2.1(e)); require the appointment of a new independent director within a year of final approval of the Settlement (*id.*, 2.1 (k)(2)); provide for mandatory employee training in risk assessment and compliance (*id.*, ¶ 2.1(i)); and adopt a written whistleblower policy that will be posted to the Company's website. Stipulation. *Id.*, ¶ 2.1(m).

[3] "¶ __" refers to paragraphs of the Verified Stockholder Derivative Complaint on June 3, 2022 (D.I. 1).

networks. *Id*. During the Relevant Period, Defendants claimed Intrusion had obtained "positive results seen in the preliminary stages of Beta testing, where Shield was able to stop more than 400,000 threats to three companies in just the first three days of testing" due to its use of real-time AI analysis (¶ 53): that Shield was "plug-n-play" compatible with existing firewalls and network security architecture (¶ 59): that 90% of Shield beta test customers had subscribed to the Company's Shield service (¶ 64); and that Shield was being used for more than 50,000 seats, approximately eight times higher than Intrusion's initial first quarter goal. ¶ 72.

Plaintiff alleged, however, that the Individual Defendants made, or permitted the dissemination of, materially false and misleading statements and/or failed to disclose material facts concerning Shield, including its design and capabilities, the parameters and purported success of product testing, and the number and identity of customers who purportedly purchased Shield. ¶¶ 47-50. In fact, Shield was not only non-functional, the product adversely affected customers' networks, sometimes shutting them down entirely. ¶ 79. On April 14, 2021, research firm White Diamond Research released a report casting doubt on the beta test results and customer agreements announced by Intrusion. ¶¶ 74-75.  On August 26, 2021, the Company filed a current report on Form 8-K with the SEC disclosing that it had received notice that the SEC Division of Enforcement had initiated an investigation into the Company two weeks prior. ¶ 86. On April 16, 2021, Intrusion investors initiated a securities class action in the United States District Court for the Eastern District of Texas against the Company and Defendants Blount and Byrd, captioned *Celeste v. Intrusion, Inc. et al.*, Civil Action No. 4:21-cv-00307-SDJ (the "Securities Class Action"). ¶ 4. The Securities Class Action alleged the defendants issued materially false and misleading statements in connection with the Shield.

On April 13, 2022, the Securities Class Action was stayed to permit the parties to file a

motion for preliminary approval of class action settlement. *Id*. The parties in the Securities Class Action subsequently filed a motion for final approval of class action settlement. On December 16, 2022, the Court entered an order finally approving the settlement of the Securities Class Action whereby Intrusion agreed to pay $3,250,000 in cash to the class members.

## PROCEDURAL BACKGROUND

On June 3, 2022, Plaintiff filed a Verified Stockholder Derivative Complaint on behalf of Intrusion against the Individual Defendants, asserting claims for breaches of fiduciary duty, unjust enrichment, waste of corporate assets, and for violations of the Exchange Act. On December 20, 2022, the Parties filed a stipulation to stay the case for sixty days to afford them the opportunity to discuss next steps and submit a proposed schedule for the Court's consideration. The Court entered an order staying the case the same day. (D.I. 21, 22).

In or about January 2023, counsel for the Parties commenced discussions and negotiations concerning a possible resolution of the Action. Declaration of Seth D. Rigrodsky in Support of Plaintiff's Unopposed Motion for Final Approval of Derivative Settlement, dated March 5, 2024 ("Rigrodsky Decl."), ¶ 14. Upon expiration of the stay, the Parties requested, and were subsequently granted, extensions of the stay to allow additional time for the Parties to continue discussions concerning the possible resolution of the Action. The Court entered orders continuing the stay on March 8, 2023, May 9, 2023, and June 7, 2023 (D.I. 24, 27, 29). Following extensive negotiations by and between Plaintiff's Counsel and counsel for Defendants, the Parties reached an agreement-in-principle to resolve the Action in or about June 2023.[4] Rigrodsky Decl., ¶ 15.

---

[4] Only after the Parties reached an agreement-in-principle regarding the substantive terms of the Settlement, did the Parties commence negotiations concerning the attorneys' fees and expenses to be paid to Plaintiff's Counsel in consideration of the substantial benefits achieved for the Company through their efforts. Rigrodsky Decl., ¶ 16.

On October 16, 2023, Plaintiff filed his unopposed motion for preliminary approval of the Settlement. (D.I. 35).  The Court entered a Preliminary Approval Order on October 17, 2023, *inter alia,* approving the proposed form of notice, setting a deadline for the filing of objections, and scheduling a hearing regarding final approval of the Settlement. (D.I. 38). Due to issues with the dissemination of Notice, the Court issued an Order Resetting Dates on December 21, 2023 (D.I. 41) and Notice was re-issued  pursuant to the revised schedule set by the Court. *See* Declaration of Andrew S. Dupre, dated  February 9, 2024 ("Dupre Declaration") (D.I. 42), ¶¶  5, 7-9.

## ARGUMENT

### I.    STANDARDS GOVERNING FINAL APPROVAL

#### A.    Settlements Are Generally Favored

Rule 23.1 of the Federal Rules of Civil Procedure requires judicial approval for the settlement of a derivative claim.  There is an overriding public interest in settling and quieting litigation, and this is particularly true in derivative matters, class actions, and other complex litigation. *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged")[5]; *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation").

"Settlements of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable'" *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (quoting *Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1973); 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS §11:41, at 87 (4th ed. 2002) ("The

---

[5] Unless otherwise noted, all internal citations are omitted.

compromise of complex litigation is encouraged by the courts and favored by public policy."); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("the odds of winning [a] derivative lawsuit [a]re extremely small").

### B.    The Settlement Meets the Standards for Final Approval

Final approval of a derivative action requires the district court to determine whether "the settlement is fair, adequate, and reasonable." *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118 (3d Cir. 1990); *see also In re Intel Corp. Derivative Litig.*, Cons. C.A. No. 09-867-JJF, 2010 U.S. Dist. LEXIS 74661, at *3 (D. Del. July 20, 2010). As explained by the Third Circuit, the court should "consider factors applied initially to class action settlement agreements, . . . and subsequently to derivative actions." *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993).

The Third Circuit has made clear that the "principal factor" to be considered in deciding whether a derivative settlement merits approval "is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978).[6]  Courts also consider additional factors, known as the "*Girsh*" factors, including:

> (1) the complexity, expense and likely duration of the litigation . . .; (2) the reaction of the class to the settlement . . .; (3) the stage of the proceedings and the amount of discovery completed . . .; (4) the risks of establishing liability . . .; (5) the risks of establishing damages . . .; (6) the risks of maintaining the class action through the trial . . .; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . .; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. . . .

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (ellipses in original) (quoting *City of Detroit v.*

---

[6] This assessment should be made, "in light of the best possible recovery, of the risks of establishing liability and proving damages in the event the case is not settled, and of the cost of prolonging the litigation." *Shlensky*, 574 F.2d at 147.

*Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)); *see also Bell Atlantic Corp.*, 2 F.3d 1304 (3rd Cir. 1993) (the *Girsh* factors are relevant to assessing final approval of a derivative settlement).[7] Here, consideration of the "extent of the benefits" of the proposed Settlement to the Intrusion and the *Girsh* factors all support final approval of the Settlement.

### 1. The Settlement Offers Substantial Benefits to Intrusion

The central calculus in evaluating any settlement involves weighing the benefits guaranteed by the settlement against the range of possible recovery through further litigation, discounted by the probability of success on the merits and the complexity, expense, and likely duration of the litigation. *See Girsh,* 521 F.2d at 157 (courts must compare "the range of reasonableness of the settlement . . . to a possible recovery in light of all the attendant risks of litigation. . . ."); *Pfeiffer v. Alpert*, C.A. No. 10-1063, 2011 U.S. Dist. LEXIS 174370, *6 (D. Del. Aug. 3, 2011) (approving settlement after balancing the recovery against the "best possible recovery" and consideration of the complexity, expense and duration of the litigation if settlement had not been reached).

The Settlement readily meets these criteria. The Settlement guarantees significant benefits to Intrusion and its stockholders, namely, a comprehensive package of targeted corporate governance and internal controls reforms that provide for enhanced oversight of the integrity of the public statements issued by, or on behalf of, Intrusion. The Measures will, therefore, substantially reduce the likelihood of the recurrence of the wrongdoing alleged in the Action. (Stipulation, ¶¶ 2.1(a)-(m)).

For example, the current Audit Committee Charter provides, *inter alia*, that the committee

---

[7] Not all of the *Girsh* factors need be met in order for a settlement to be approved. *In re Am. Fam. Enters.*, 256 B.R. 377, 418 (D.N.J. 2000) (*Girsh* factors are "a guide and the absence of one or more does not automatically render the settlement unfair").

is responsible for oversight of Intrusion's financial reporting, including the adequacy of the internal controls over such reporting, working with the Company's independent auditors, and risk oversight.[8] The Measures require amendment of the Audit Committee's charter to expand its oversight responsibilities by requiring the Audit Committee: (i) to review the Company's periodic SEC filings in conjunction with the Disclosure Committee, the General Counsel, and the CFO, to ensure compliance with all public reporting requirements and applicable law, including disclosure of complete and accurate material information, (ii) to investigate, in conjunction with the General Counsel, all potential or reported material violations of public reporting requirements or applicable law, and (iii) to prepare a written report to the Board whenever the Audit Committee identifies a material violation of public reporting requirements or applicable law, which includes specific recommendations or proposals to mitigate such violations in the future. (Stipulation, ¶¶ 2.1(a)(3)-(5)).

Likewise, Intrusion is required to amend the charter of its Disclosure Committee to provide that the committee shall, in consultation with the Audit Committee, the General Counsel and others, ensure that all public statements are accurate and complete in all material respects. The Disclosure Committee must report each quarter to the Audit Committee concerning its activities to ensure that Intrusion's public statements are accurate and complete. (Stipulation, ¶¶ 2.1(b)(1)-(2)). In addition, the responsibilities of the General Counsel will be expanded to include performing an independent review of the Company's draft quarterly and annual SEC reports prior to publication, as well as review of press releases, media articles, earnings call materials, investor

---

[8] *See* Intrusion, Inc., *Audit Committee Charter* (Sep. 14, 2020), https://s201.q4cdn.com/653989727/files/doc_downloads/gov-docs/Audit_Committee_Charter.pdf (last visited Dec. 19, 2023) at p. 1.

presentations, and other statements prior to dissemination, to ensure accurate, complete and timely disclosures concerning the Company's legal compliance. (*Id*., ¶¶ 2.1(c)(4)-(5)). The General Counsel is also now charged with working with the Audit Committee to evaluate the accuracy, completeness, and timeliness of disclosures concerning the adequacy of the Company's internal controls over financial reporting, legal compliance, and ongoing and potential litigation and compliance issues. (*Id*.,,¶ 2.1(c)(6)).

The Company will also be required to retain a consultant to conduct an independent analysis of Intrusion's internal controls over public disclosures and legal compliance in each of the next two (2) years. (Stipulation, ¶ 2.1(d)). The consultant will prepare an annual written report with recommendations for the Audit Committee, Governance Committee and General Counsel, and meet annually with the Board, the CEO, CFO and the Company's independent auditors. The Board must consider the consultant's recommendations and its meeting minutes must reflect the reasons for rejecting any of those recommendations. (Stipulation at 17). The Compensation Committee's charter will also be amended to require that in setting or approving short-term compensation arrangements, the Compensation Committee shall consider a particular executive's performance as it relates to both legal compliance and compliance with the Company's internal policies and procedures. *Id*., ¶ 2.1(g)(1). The Measures, thus, directly target the wrongdoing alleged by Plaintiff and significantly reduce the risk of such wrongdoing reoccurring at Intrusion in the future.

Courts have long recognized that "a corporation may receive a 'substantial benefit' from a derivative suit . . . regardless of whether the benefit is pecuniary in nature." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970). "Strong corporate governance is fundamental to the economic well-being and success of a corporation[,]" and corporate governance reforms designed to prevent

recurrence of alleged wrongdoing, "provide valuable benefits to public companies." *In re NVIDIA Corp. Deriv. Litig.*, No. C-06-06110, 2008 U.S. Dist. LEXIS 117351, at *10 (N.D. Cal. Dec. 22, 2008). Where, as here, the alleged wrongdoing is significant and causes substantial damage to corporate interests, "the effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor[.]" *Maher*, 714 F.2d at 461.

Settlements supported by corporate governance reforms "specifically designed to minimize the probability of violations of fiduciary duties" and violations of federal laws and regulations are generally found to be reasonable and adequate. *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005); *see also Unite Nat'l Ret. Fund v. Watts*, No. Civ. A. 04CV3603, 2005 U.S. Dist. LEXIS 26246, at *10 (D.N.J. Oct. 28, 2005) (same).

Moreover, the costs, risks and delays that would result from attempting to improve on the Settlement through further litigation would have been substantial.[9] While Plaintiff believes he could have overcome any threshold challenge to his claims, the costs of proceeding with the litigation, and the associated delays would have been significant for both Intrusion and Plaintiff. Properly discounted for these costs, risks, and delays, the likelihood that a more favorable recovery would have been secured is speculative at best. Taking these factors into account, the Measures that Plaintiff secured in the Settlement clearly fall within a range that may be approved as fair, reasonable, and adequate.

---

[9] The substantive rules for determining if plaintiff has adequately alleged demand futility is governed by Delaware law because Intrusion is a Delaware corporation. *Foote v. Mehrotra*, C.A. No. 21-00169, 2023 U.S. Dist. LEXIS 196796, *8 (D. Del. Nov. 2, 2023). "[M]eeting the demand futility standard is a 'difficult feat under Delaware law.'" *Id*. at 10 (quoting *Ryan v. Gifford*, 918 A.2d 341, 352 n.23 (Del Ch. 2007)).

### 2.    The Settlement Was Negotiated at Arm's Length

The Settlement was achieved through hard-fought, arm's-length negotiations represented by experienced counsel. *See* Rigrodsky Decl., ¶¶ 15-16. The negotiations regarding the settlement began in January 2023 and continued until the Settlement was finally reached in or about June 2023. Rigrodsky Decl. *Id*. During that process, the Parties exchanged numerous draft term sheets and engaged in extensive negotiations regarding the governance reforms. Furthermore, the Parties did not begin negotiating the Fee and Expense Award for Plaintiff's Counsel until after reaching an agreement in principle regarding the material substantive terms of the Settlement, finalizing the Measures. Rigrodsky Decl., ¶¶ 17-18.  These facts weigh in favor of approval of the Settlement. *See, e.g.*, *In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-6820, 2014 U.S. Dist. LEXIS 30366, at *12 (E.D. Pa. Mar. 7, 2014) (the fact that attorneys' fees were not negotiated until after the material terms of the settlement had been reached further demonstrates the fairness of the settlement because "the amount of attorneys' fees could not have affected the amount of [the] recovery").

The Parties have each independently considered the Settlement and agree that it is in the best interests of Intrusion and current Intrusion stockholders. Significant weight should be accorded to the belief of experienced counsel that a settlement is in the best interest of those affected by the Settlement.  *See Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

### 3.    The Intrusion Stockholders Were Well Represented

Plaintiff and his counsel have provided excellent representation to the Intrusion stockholders.  A court "should attribute significant weight to the belief of experienced counsel that settlement is in the best interest[]" of the corporation or class.  *In re Hemispherx Biopharma, Inc.*,

*Sec. Litig.*, No. 09-5262, 2011 U.S. Dist. LEXIS 172214, at *19 (E.D. Pa. Feb. 14, 2011) (citing *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995)); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

The involvement of counsel experienced in derivative and corporate governance litigation here supports finding a presumption of the overall fairness of the Settlement. *See Guevoura Fund Ltd. v. Sillerman,* Case No. 1:15-cv-07192-CM, 2019 U.S. Dist. LEXIS 218116, at *16 (S.D.N.Y. Dec. 18, 2019) ("A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to counsel's recommendation.").

### 4.    The Complexity, Expense, and Likely Duration of the Litigation

The *Girsh* factors also include the complexity, expense, and likely duration of the litigation, taking into account the "probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001); *GMC*, 55 F.3d at 812. This complex shareholder derivative action presents significant substantive and procedural hurdles. *See Maher*, 714 F.2d at 455 n.6 (derivative litigation "is notoriously difficult and unpredictable" and poses substantial procedural and legal hurdles). As a threshold issue, Plaintiff would have to establish that demand on the Board would be futile and, if successful, ongoing litigation in this Court would likely have taken years, with extensive discovery (including production and review of numerous documents, summary judgment motions, and depositions of Intrusion directors and officers), involvement and depositions of experts, and likely post-trial motions and appeals. *See Vinh Du v. Blackford*, No. 17-cv-194, 2018 U.S. Dist. LEXIS 211796, at *16 (D. Del. Dec. 18, 2018) (approving settlement, noting that, "[c]ontinued litigation would have also required significant and costly expert discovery. Summary judgment motions have not yet been filed and, thus, the

litigation would have continued for a substantial period of time"); *In re Viropharma Inc. Sec. Litig.*, 2016 U.S. Dist. LEXIS 8626, at *10 (E.D. Pa. Jan. 25, 2016) (noting that, "[i]f this case were to proceed to trial, it would likely take years" because the case presented, "a complicated matter necessarily requiring extensive briefing").

In short, the significant uncertainty Plaintiff faced had he continued this litigation, and the costs and delay of continuing the litigation, weighs heavily in favor of approving the Settlement.

### 5.    The Reaction of the Stockholders to the Settlement

Courts view the absence of opposition to a settlement by affected parties as a factor supporting judicial approval of a settlement.  *See, e.g.*, *Mohammed v. Ellis*, No. 12–cv–1831, 2014 U.S. Dist. LEXIS 118796, at *12-13 (D. Colo. Aug. 26, 2014) ("the fact that no objections to the settlement were filed by any shareholder weighs heavily in favor of approval of the derivative litigation settlement"); *In re AOL Time Warner S'holder Derivative Litig.*, 2006 U.S. Dist. LEXIS 63260, at *16 (S.D.N.Y. Sep. 6, 2006) (same).

Despite the widespread dissemination notice of the Settlement approved by this Court, not a single Intrusion stockholder has filed an objection to any aspect of the Settlement to date.  Thus, there is no reason to believe that the Settlement is not widely endorsed by the Company's stockholders.

### 6.    The Stage of Proceedings at Which Settlement Was Achieved

While the Settlement was reached at a very early stage of the proceedings, formal proceedings and discovery are not required for Plaintiff to assess the merits of his claims and his likelihood of success.  *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436-37 (3d Cir. 2016), *as amended* May 2, 2016 (holding formal discovery was not required to support settlement and that, "[i]n some cases, informal discovery will be enough for class counsel

to assess the value of the class claims and negotiate a settlement that provides fair compensation."); *see also Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977) (plaintiffs "achieved the desired quantum of information necessary to achieve a settlement" through informal discovery and investigation); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (holding formal discovery is not necessary when sufficient information is gathered through other means). Here, while the Parties did not engage in formal discovery, counsel for Defendants shared confidential information with Plaintiff's Counsel during the course of settlement negotiations.

Accordingly, the litigation status of this action is neutral with respect to the Settlement.[10]

### 7.   Risks in Establishing Liability and Damages

The fourth and fifth *Girsh* factors include a "survey [of] the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *Warfarin*, 391 F.3d at 537. In other words, these two factors attempt, "to measure the expected value of litigating the action rather than settling it at the current time." *Cendant Corp.*, 264 F.3d at 238. Both factors strongly weigh in favor of approval of the Settlement.

Here, Plaintiff faced an initial substantial hurdle in establishing that demand was futile under Federal Rule of Civil Procedure 23.1 and Delaware law. *Foote*, 2023 U.S. Dist. LEXIS 196796, *8-10; s*ee also Unite Nat'l Ret. Fund*, 2005 U.S. Dist. LEXIS 26246, *13 (approving

---

[10] The SEC filed a complaint against Intrusion for violation of the federal securities laws in the United States District Court for the Eastern District of Texas on September 26, 2023 (the "SEC Action"). *See* Rigrodsky Decl., ¶ 19; Ex. A. Intrusion consented to a final judgment in the SEC Action, entered on October 5, 2023, by which the Company is permanently restrained from further violations of the federal securities laws. *Id*., ¶ 22; Ex. B. The factual allegations of that complaint are entirely consistent with the allegations set forth in Plaintiff's complaint, demonstrating that extensive discovery concerning the falsity of the public statements concerning the Intrusion Shield was unnecessary.

settlement where, "Plaintiffs face the difficulties inherent in derivative litigation as well as significant procedural and substantive obstacles . . . [including] sufficient compliance with the demand requirement of Fed. R. Civ. P. 23.1 . . .") (internal quotation omitted).  Even if Plaintiff did prevail, he faced significant obstacles in establishing that the Board members breached their fiduciary duties by failing to exercise the requisite degree of oversight to prevent the issuance of the materially misleading statements.[11]

Balanced against these risks, the Measures provide immediate benefits to Intrusion and its stockholders by instituting governance reforms designed to prevent recurrence of the wrongdoing.

These factors therefore weigh heavily in favor of final approval.

### 8.    Risks of Maintaining the Action Through Trial

Moreover, the continuation of this litigation would be lengthy and costly for all Parties. The consequences of continued litigation would be particularly burdensome for Intrusion because, according to Intrusion's most recent Form 10-Q, filed with the SEC on November 14, 2023, the Company had cash and cash equivalents of $0.2 million, a working capital *deficit* of $14.8 million, and its independent auditor has "expressed substantial doubt about the Company's ability to continue as a going concern."[12]  In addition, the Company has indicated that its insurance coverage has been exhausted.[13]  Continued litigation would necessitate discovery, motion practice, and potential trial. These facts provide further support for the Settlement.  *See Healthcare Services*,

---

[11] Plaintiff's claim is based on a breach of the fiduciary duty of loyalty through failure to exercise adequate oversight over the public disclosures concerning the Intrusion Shield, a *Caremark* claim, which is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  *Stone ex rel. AmSouth Bancorp. v. Ritter*, 911 A.2d 362, 372 (Del. 2006).

[12] Intrusion, Inc., Quarterly Report (Form 10-Q) (Nov. 14, 2023), p. 8.

[13] Intrusion, Inc., Quarterly Report (Form 10-Q) (Nov. 14, 2023), pp. 11, 23, 24.

Case No. 2:20-cv-03426-WB, 2022 U.S. Dist. LEXIS 134005, (E.D. Pa. July 28, 2022) at *29-30 (granting final approval of stockholder derivative action settlement, and noting, "the continuation of this litigation would be expensive for all parties and would likely be lengthy.").

### 9. Defendants' Ability to Withstand a Greater Judgment

As the Settlement does not include a monetary component, Defendants' ability to withstand a greater judgment is not relevant. *See Du*, 2018 U.S. Dist. LEXIS 211796, at *19 ("In that there is no monetary component to this Settlement, this factor [is] inapplicable").

### 10. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and in Light of the Litigation Risks

The final two *Girsh* factors evaluate whether the settlement represents a fair and "good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538. "In conducting this evaluation, it is recognized that 'settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding to[o] large a settlement based on the court's view of the merits of the litigation.'" *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 92 (D.N.J. 2001).

Because Plaintiff faces a real risk of not prevailing on his claims, these factors weigh in favor of approving the Settlement. *See In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 191 (E.D. Pa. 2000) ("In light of the difficulties that would likely have attended any full-fledged suit on the merits of this case and of the continued diminution of the insurance policies, settlement of this derivative action is reasonable and in [the corporation's] best interests"). Moreover, the Settlement addresses Intrusion's governance deficiencies and protects from similar violations occurring in the future. *See Du*, 2018 U.S. Dist. LEXIS 211796, at *14 (finding support for settlement where the settlement, "addresses Plaintiff's concerns by rescinding the stock options at issue and protecting the class members from future issues of a similar nature"). Also supporting

16

the Settlement, the stockholders will obtain substantial benefits from implementation of the Reforms now, rather than any award to be obtained following a trial. *See Unite Nat'l Ret. Fund*, 2005 U.S. Dist. LEXIS 26246, at \*15-16 ("The settlement provides immediate and substantial benefits for all parties and represents a better option than little or no recovery at all"). Accordingly, these factors support final approval of the Settlement.

C.   **The Settlement Merits a Presumption of Fairness**

The Third Circuit recognizes that there is a presumption of fairness when the court finds: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *GMC Pick-Up*, 55 F.3d at 785; *see also Viropharma*, 2016 U.S. Dist. LEXIS 8626, \*11 (same).

These factors are satisfied here. The negotiations were conducted at arm's length and, while there was no formal discovery conducted, Plaintiff was well-aware of the governance deficiencies that enabled the wrongdoing through the Settlement negotiation process. Moreover, as discussed below, the proponents of the Settlement are experienced in similar litigation, and there have been no objections to date. Thus, in the absence of any apparent deficiencies, the Settlement should be accorded the presumption of fairness and receive final approval.

II.   **THE NOTICE SATISFIES DUE PROCESS**

Notice to shareholders must be "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *George*, 369 F. Supp. 3d at 1369 (brackets in original). Here, pursuant to this Court's Preliminary Approval Order, and Order Resetting Dates, Intrusion posted notice in a filing with the SEC on Form 8-K on January 9, 2024 and on the "Investors" section of the Company's

website on January 8, 2024.[14]  Courts broadly recognize that this form and manner of notice meets due process standards. *See Pfeiffer v. Alpert,* C.A. No. 10-1063, 2011 U.S. Dist. LEXIS 174370, at *7-8 (D. Del. Aug. 3, 2011) (finding publication of summary notice of settlement of stockholder derivative action in *Business Investor's Daily* and on plaintiff's counsel's website, with link to full notice on plaintiff's counsel's website, satisfied due process).

Notice is thereby adequate to satisfy due process and the Settlement should be approved.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order granting final approval of the proposed Settlement.

Dated: March 6, 2024

Respectfully submitted,

**RIGRODSKY LAW, P.A.**

*/s/ Seth D. Rigrodsky*
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
Herbert Mondros (#3308)
300 Delaware Avenue. Suite 210
Wilmington. DE 19801
(302) 295-5310
Email: sdr@rl-legal.com
        hwm@rl-legal.com
        gms@rl-legal.com

*Counsel for Plaintiff Nathan Prawitt*

---

[14] *See* Dupre Declaration, ¶¶ 5, 7-9; Exs. A-B (D.I. 42, 42-1).